# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1879, IN THE
SIXTY-FOURTH YEAR OF THE STATE.

| | |
|---|---|
| 67 | 103 |
| 125 | 250 |
| 67 | 103 |
| 141 | 192 |
| 67 | 103 |
| 148 | 564 |
| 151 | 244 |
| 151 | 410 |
| 67 | 103 |
| 170 | 138 |

---

### HOLLIDAY v. HENDERSON, AUDITOR OF STATE.

MANDATE.—*Publication, by Auditor of State, in Newspapers, of Statements of Foreign Insurance Companies.—His Selection Final.*—The auditor of state may be compelled, by mandate, to proceed to exercise the authority conferred upon him by that clause of section 1 of the amendatory act of March 3d, 1877, Acts 1877, Reg. Sess., p. 65, directing him to cause the publication, "in the two leading daily newspapers of the State having the largest general circulation therein," of the semi-annual statements of foreign insurance companies doing business in this State. But his selection of such newspapers is final, and he can not be compelled to select any particular newspaper in which to make such publication.

From the Marion Circuit Court.

*J. E. McDonald, J. M. Butler, F. B. McDonald, G. C. Butler, A. G. Porter, W. P. Fishback, G. T. Porter* and *R. H. Goldsborough*, for appellant.

*F. M. Trissal, W. M. McCarty, J. A. Finch* and *F. M. Finch*, for appellee.

(103)

BIDDLE, J.—Affidavit and motion, by appellant, for a writ of mandate against the appellee as Auditor of State.

The substantial facts stated in the affidavit of the appellant are as follows:

That he is a citizen of the State, and is, and was at the time of the passage of the act hereinafter named, the proprietor and publisher of "The Indianapolis News," a leading daily newspaper, published in the city of Indianapolis, having a general circulation in the State, and which he believes was, at the time of the passage of said act, and has since continuously been, one of the leading daily newspapers of the State, having the largest general circulation therein; that on the 3d day of March, 1877, the General Assembly of the State of Indiana passed an amendatory act regulating foreign insurance companies doing business in this State, providing, amongst other things, that it shall be incumbent on every insurance company incorporated by any other State than the State of Indiana, to furnish semi-annual statements, as therein provided, to the Auditor of State, on the first day of January and July of each year, and that said auditor shall cause a copy of such semi-annual statements "to be published in the two leading daily newspapers of the State having the largest general circulation therein: *Provided,* That not more than one dollar per square shall be paid for each one of said publications, the expense thereof to be paid by the company : *And provided,* That the provisions of this section shall not be construed to extend, to include or embrace horse insurance and detective companies insuring against thieves ;" that at the time of the passage of said act, and ever since, he has had all the presses, types, materials, equipments and capital necessary to enable him to publish in said "Indianapolis News," in proper manner and style, the statements required by said act as aforesaid, and has been ready and willing to receive in full for publishing the same, less than one dollar, to wit,

seventy-five cents per square, or even a less sum; that about the 25th day of June, 1877, he served a notice in writing upon said auditor, notifying him of the substance of the above facts, claiming the right, under the provisions of said act to have published in said " Indianapolis News " the statements aforesaid, and demanded that the auditor should cause said statements to be published in said newspaper, and offered to have his claim to such right submitted to any investigation, trial or tests that said auditor might suggest, to verify the same, all of which the said auditor refused to do, and declared his intention to have said statements published in the " Indianapolis Journal" and the " Indianapolis Sentinel," two daily newspapers published in Indianapolis; that said Henderson, before and at that time, was, and has ever since been, owner and holder of capital to a large amount in said "Indianapolis Sentinel Company," and was a member of the board of directors of said company, and an officer thereof and interested in the profits and responsible for the losses thereof; and he alleges that during none of said period has the "Indianapolis Sentinel" been one of the two leading daily newspapers of this State, having the largest general circulation therein; that said Henderson, knowing this to be the truth, and that the "Indianapolis News" is one of the two leading daily newspapers in the State having the largest circulation therein, has deliberately and wilfully, for his own private profit and advantage, as a stockholder and officer of said "Indianapolis Sentinel Company," caused many of such semi-annual statements to be published in the "Indianapolis Sentinel," and has declared his purpose to cause all such further statements to be published, during his term of office, therein; and has allowed such statements as have been published in the "Sentinel" to be stretched out in the printing thereof so as to cause the expense of publishing the same to be at least one-half more

than it would have been if printed in the customary and proper form; that he is informed that said Henderson claims the discretionary power to decide as he pleases —notwithstanding his interest in the "Sentinel Company" —which are the "two leading daily newspapers in the State having the largest general circulation therein," and that the exercise of such discretion can not be reviewed by a court; and that he has undertaken to decide that no newspaper can be entitled to publish said statements which does not circulate in every county in the State, and that "it must be in fact or profession an organ of one or the other of the two chief political parties of the State;" all of which is stated and sworn to on the information and belief of the appellant as affiant.

Prayer for a writ of mandate in the alternative, and for relief against the said auditor of state as follows:

*First.* That he shall cause the said statements to be published in the "Indianapolis News;"

*Second.* That he shall not cause the same to be published in two newspapers other than the said "Indianapolis News."

The defendant demurred to the complaint for causes:

*First.* The plaintiff has not legal capacity to maintain this action;

*Second.* The complaint does not state facts sufficient to constitute a cause of action;

*Third.* Two causes of action are improperly joined in the complaint;

*Fourth.* There is a defect of parties defendants.

The demurrer was overruled and exceptions reserved.

An answer and reply were filed, which we do not set out, as we think they present no different question from that raised by demurrer to the complaint.

On motion of the defendant, the alternate writ and the proceedings were dismissed, and judgment rendered

Holliday *v.* Henderson, Auditor of State.

against the plaintiff, that he take nothing by his suit and pay the costs. Appeal.

Assignments of error are made in this court by the appellant, and also cross assignments of error by the appellee, presenting the several questions reserved in the record; but we think the merits of the case are presented by the demurrer to the complaint. If the complaint is sufficient, the judgment is wrong; if the complaint is insufficient, the judgment is right.

The following principles, governing writs of mandate, may be held as settled:

1. A suit of mandate will lie to compel the performance of an act which the law specially enjoins.

2. The act so enjoined by law must be ministerial or executive, or the writ will not lie.

3. It will not lie to compel the performance of a judicial or discretionary act.

4. Where it is discretionary to do or not to do the act sought to be compelled, the writ will not lie.

5. Where the act is specially enjoined by law, but the manner of performing it is discretionary, or involves judicial action, the writ will lie to compel the performance of the act, but will not lie to compel the performance of the act in any particular manner.

6. The writ will not lie in any case where the party who seeks it has any other adequate legal remedy.

We will examine the case before us, according to the above settled principles.

1. Do the facts averred in the complaint constitute a cause of action?

The Legislature of the State of New York, April 24th, 1863, passed an act containing the following provision:

" No portion of the sums which shall hereafter be raised by tax or assessment in the city and county of New York

shall be paid for advertising, except the same shall have been incurred for advertisements in the newspapers authorized by the mayor and comptroller of said city, who shall designate four papers having the largest daily circulation, and any six others in their discretion, not to exceed ten in all."

This section is the same, in principle, as the act under which the appellant sues, requiring the publication of the semi-annual statements of foreign insurance companies, the effective portion of which is in the following words:

"And the auditor shall cause a copy of such semi-annual statement to be published in the two leading daily newspapers of the State having the largest general circulation therein." Acts 1877, Reg. Sess., p. 67.

The case of the *People* v. *Brennan*, 39 Barb. 651, was an appeal from an order made at special term, directing a peremptory mandamus to issue, commanding the respondent to unite with the relator in designating four newspapers having the largest daily circulation, namely, "The New York Herald," "The New York Sun," "The New York Tribune," and "The New York Times," in pursuance of the section of the statute above cited.

In reviewing the case, the Supreme Court said: "The words of the act are, 'four papers having the largest daily circulation.' We have no right to add to those the words 'in the city of New York.' * * * But as the determination of the question of fact which four papers have the largest daily circulation, involves the consideration of evidence, and an adjudication upon such evidence, by the mayor and comptroller, we do not see upon what principle a mandamus can issue commanding the comptroller to unite with the mayor in designating four certain papers, naming them in the mandamus. This court could, by mandamus, compel the mayor and comptroller to meet and act in the matter; but we do not think that we could compel

them to act in a particular manner; that is, to unite in designating four certain papers named by the court." The order was directed by the Supreme Court to be modified accordingly.

This case seems to us to be at one with the case before us.

This court has held that a mandate will not lie to compel the common council of a city to cause a street improvement to be made and paid for out of the general funds in the city treasury, against their judgment as to its expediency. *The Mayor and Common Council of Michigan City* v. *Roberts*, 34 Ind. 471. Also, that a mandate is never issued to control the exercise of judicial power or discretion in an inferior tribunal; its appropriate office is to set the subordinate tribunal in motion, to command it to proceed and give judgment, but not to direct it what judgment to give. *The State* v. *The Board of Commissioners of Tippecanoe County*, 45 Ind. 501. Official discretion can not be controlled by mandate. *Burnet* v. *The Trustees of the Wabash and Erie Canal*, 50 Ind. 251. A mandate will not lie to compel a board of county commissioners to refund a tax alleged to have been illegally collected. Such an act is a judicial and not a ministerial act. *The State* v. *The Board of Commissioners of Miami County*, 63 Ind. 497.

The following authorities will also support the views expressed in this opinion: *Ex parte Bassett*, 2 Cow. 458; *The Judges of the Oneida Common Pleas* v. *The People*, 18 Wend. 79; *State of Kansas* v. *Robinson*, 1 Kan. 188; *Seymour* v. *Ely*, 37 Conn. 103; *Swan* v. *Gray*, 44 Miss. 393; *Decatur* v. *Paulding*, 14 Pet. 497; *Huff* v. *Kimball*, 39 Ind. 411; *Kisler* v. *Cameron*, 39 Ind. 488; *The Indianapolis, Peru and Chicago R. W. Company* v. *Beam*, 63 Ind. 490.

The appellant does not seek to compel the auditor to act, under the law, according to his discretion and judgment—this as a citizen, not as such publisher, he could do,

if the auditor had refused to act; but he seeks to compel him to act in a particular manner, namely, to cause the statements to be published in the "Indianapolis News." This he can not do, because the act requires the exercise of discretion and judgment, which is entrusted by the law to the auditor. In short, a mandate will lie to compel the auditor to act, under the law, according to his discretion and judgment, but it will not lie to compel him to exercise his discretion and judgment in a particular manner.

According to these views, the facts stated in the complaint do not constitute a cause of action. Having come to this conclusion upon the cross error, it becomes unnecessary to examine any other question in the case. The court did not err in dismissing the case.

The judgment is affirmed, at the costs of the appellant.